**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

IN RE: BOWFLEX INC.,

PROPOSED CLASS REPRESENTATIVES,

Appellants,

v.

THE BOWFLEX LIQUIDATING TRUST, *et al.*,

Appellees.

Case No. 25-cv-14953

On Appeal from
Bankruptcy Case No. 24-bk-12364

**OPINION**

**APPEARANCES**:

Frederick John Klorczyk, III
KAMBERLAW LLC
305 Broadway, Suite 713
New York, NY 10007

*On behalf of Appellants*.

James S. Carr
KELLEY DRYE & WARREN LLP
3 World Trade Center
175 Greenwich Street
New York, NY 10007

*On behalf of Appellee BowFlex Liquidating Trust.*

Robert Kevin Malone
Kyle McEvilly
CONNELL FOLEY LLP
56 Livingston Avenue
Roseland, NJ 07068

*On behalf of Appellees Johnson Health Tech Trading, Inc. & Johnson Health Tech Retail, Inc.*

**O'HEARN, District Judge.**

This matter comes before the Court on appeal from an order of the United States Bankruptcy Court for the District of New Jersey (the "Bankruptcy Court") granting Appellees' motion to enforce certain prior orders entered in the underlying Chapter 11 bankruptcy case. The Court heard oral argument on May 20, 2026. For the reasons that follow, the Court **AFFIRMS** the Bankruptcy Court's decision.

## I. BACKGROUND[1]

Before filing for bankruptcy, BowFlex Inc. and BowFlex New Jersey LLC (together, "BowFlex" or "Debtors") were well-known designers, manufacturers, and sellers of home fitness equipment. (*See* JA 8). Appellants Elizabeth Cosin ("Cosin"), Duke Douglas ("Douglas"), Alan Calderon ("Calderon"), and Robert Ahearn ("Ahearn") (collectively, "Appellants") each purchased BowFlex adjustable dumbbells before BowFlex's bankruptcy. (*See* AA 285–377). The bankruptcy proceedings culminated in Johnson Health Tech Trading, Inc. ("JHTT") and Johnson Health Tech Retail, Inc. ("JHTR"; jointly with JHTT, "Johnson") purchasing all or substantially all of BowFlex's assets with protections from certain legacy liabilities.[2] (AA 886–914).

Not long after the sale, however, Johnson recalled the dumbbells Appellants and others had purchased. (AA 449–63). Appellants thereafter sued in federal court to recover economic damages for what they allege was an ineffective recall of a defective product. (*See* AA 285–377). Rather than litigate those new actions in the various courts in which they were filed, Johnson and the

[1] The facts in this appeal are not disputed in any material respect. For clarity, citations in the form "(AA [ECF page number])" refer to Appellants' Appendix, (ECF No. 7-1), and citations in the form "(JA [ECF page number])" refer to Appellees' Appendix, (ECF No. 8-1).

[2] The operative purchase agreement identifies only JHTR as the purchaser. (*See* AA 887). However, because the parties do not meaningfully distinguish among the Johnson entities on appeal, the Court treats them as a single entity herein.

BowFlex Liquidating Trust ("Trust"; together with the Johnson entities, "Appellees") returned to the Bankruptcy Court and moved to enforce prior orders entered in the Chapter 11 proceedings, contending that those orders barred Appellants' claims. (AA 464–93). The Bankruptcy Court agreed and ordered Appellants to dismiss their federal lawsuits with prejudice. This appeal concerns whether that ruling was proper.

**A. The Chapter 11 Case**

BowFlex filed its Chapter 11 petition on March 4, 2024 ("Petition Date"). (JA 6). On the Petition Date, Johnson, through JHTR, entered into an Asset Purchase Agreement ("APA") with BowFlex, pursuant to which it agreed to serve as a stalking-horse purchaser for substantially all of the Debtors' assets. (AA 860, 886–914). The APA provides that Johnson would not "assume or otherwise be responsible for any Liability other than the Assumed Liabilities," and defines "Assumed Liabilities" to include "all Liabilities (including for any Tax) that arise on and after the Closing Date with respect to [Johnson's] ownership or operation of the Acquired Assets on and after the Closing Date." (AA 895).

BowFlex thereafter sought approval of the Johnson bidding process with the Bankruptcy Court. (*See* AA 1297–1342). On March 8, 2024, the Bankruptcy Court entered an order approving the bidding procedures and a proposed notice of sale to be provided to creditors ("Sale Notice"). (JA 44). The Sale Notice set a deadline of April 11, 2024 for objections, and stated that "any party or entity who fails to timely make an objection" to the sale "shall be forever barred from asserting any objection to the sale, including with respect to the transfer of the applicable debtor's assets free and clear of all liens, claims, encumbrances, and other interests, except as may be set forth in the applicable purchase agreement or the plan[.]" (JA 84–85 (cleaned up)). The Debtors published the Sale Notice in *The New York Times* on March 13, 2024, and in *The Seattle Times* and *The*

*Columbian* on March 14, 2024. (JA 98–104). And with assistance from third-party Epiq Corporate Restructuring, LLC ("Epiq"), the Sale Notice was also served by email on more than 1.8 million known BowFlex customers. (AA 1027–28). None of the Appellants objected to the sale.

The Bankruptcy Court officially approved the sale on April 15, 2024 ("Sale Order"), and the sale closed on April 22, 2024 ("Closing Date"). (AA 854–56). The Bankruptcy Court set May 14, 2024 as the deadline for creditors to file a proof of claim against the Debtors. (JA 380–84). None of the Appellants filed a proof of claim.

The Sale Order contains several provisions relevant to this appeal. Paragraph 8 of the Sale Order binds "any holders of Claims, Encumbrances and Interests (whether known or unknown)" to the Sale Order. (AA 873). The Sale Order defines "Claims, Encumbrances and Interests" broadly, with "Claims" incorporating the Bankruptcy Code's definition of "claim" and expressly referencing claims for "products liability" and "matters of any kind and nature." (AA 865–66). Pursuant to 11 U.S.C. § 363(f), Paragraph 9 of the Sale Order further provides that, except for Assumed Liabilities and certain Permitted Liens, Johnson took the Acquired Assets from BowFlex "free and clear of all Claims, Encumbrances and Interests of any kind or nature whatsoever." (AA 874). Paragraph 13 of the Sale Order reiterates "that all Claims, Encumbrances and Interests (other than Assumed Liabilities and Permitted Liens) existing as to the Acquired Assets have been and hereby are adjudged to be unconditionally released, discharged and terminated . . . ." (AA 876). Similarly, Paragraph 20 provides that Johnson does not "have any liability whatsoever" related to the Debtors' "business or operations" or "obligations based, in whole or in part, directly or indirectly, on . . . products liability, whether known or unknown as of the Closing [Date], now existing or hereafter arising, asserted or unasserted, fixed or contingent, liquidated or unliquidated." (AA 880).

To give preclusive effect to those provisions, Paragraph 15 of the Sale Order provides:

> Subject to the terms, conditions, and provisions of this Sale Order, all persons and entities, including, without limitation . . . litigation claimants . . . are hereby forever prohibited and enjoined from taking any action that would adversely affect or interfere with the ability of the Debtors to sell and/or transfer the Acquired Assets to [Johnson] (or its designee) in accordance with the terms of the APA and this Sale Order and are hereby forever barred, estopped and permanently enjoined from asserting such claims against [Johnson] or its property (including the Acquired Assets).

(AA 878). The Sale Order also retains exclusive jurisdiction in the Bankruptcy Court to interpret, implement, and enforce its terms, as well as the terms of the APA. (AA 882).

**B. The Dumbbell Recall and Appellants' Lawsuits**

More than one year after the Closing Date, on June 5, 2025, Johnson, in cooperation with the United States Consumer Product Safety Commission, issued a recall for BowFlex model 552 and 1090 adjustable dumbbells (the "Recalled Products") because weight plates could dislodge from the handle during use, posing an impact hazard. (*See* AA 449–63). Under the recall, two distinct remedies were provided. First, customers who purchased the Recalled Products from April 23, 2024, through May 2025 could receive replacement dumbbells or a voucher for the full purchase price and a one-year subscription to Johnson's "JRNY Fitness App." (AA 455–56). Second, customers who purchased the Recalled Products prior to April 23, 2024 (*i.e.*, on or prior to the Closing Date) were offered a prorated refund voucher and a one-year JRNY Fitness App subscription. (*Id.*).

Shortly after the recall, Appellants filed four putative class actions in three federal district courts: *Douglas v. Johnson Health Tech Trading, Inc.*, No. 25-00500 (W.D. Wis.); *Cosin v. Johnson Health Tech Retail, Inc.,* No. 25-05085 (N.D. Cal.); *Calderon v. Johnson Health Tech Trading, Inc.*, No. 25-00513 (W.D. Wis.); and *Ahearn v. Johnson Health Tech Trading, Inc.*, No. 25-03435 (E.D.N.Y.) (collectively, the "District Court Actions"). (AA 285, 304, 333, 361). The

District Court Actions asserted claims against Johnson[3] based on alleged economic injuries arising from the Recalled Products purchased before the Closing Date. (*See* AA 285–87, 304–06, 333–35, 361–63).

**C. Proceedings in the Bankruptcy Court and This Appeal**

In response to the District Court Actions, on July 1, 2025, Johnson and the Trust filed a joint motion in the Bankruptcy Court seeking to enforce the Plan, Confirmation Order, and Sale Order (the "Motion to Enforce"). (AA 464–93). The Motion to Enforce asked the Bankruptcy Court to determine that the District Court Actions violated, and were barred by, the Plan, Confirmation Order, and Sale Order, and to declare the District Court Actions void *ab initio* and without force or effect. (AA 469–70).

On July 10, 2025, Appellants served requests for production of documents on Johnson, the Debtors, and the Trust. (AA 248–66). Appellants, Johnson, and the Trust then jointly filed, and the Bankruptcy Court approved, a Stipulation and Consent Order ("Scheduling Stipulation") which extended certain deadlines in the District Court Actions and set the briefing schedule and hearing date for the Motion to Enforce. (JA 417–24). The Scheduling Stipulation did not address Appellants' discovery requests or needs.

On July 21, 2025, Appellants opposed the Motion to Enforce. (AA 267–81). Cosin was the only Appellant to submit a declaration in support of Appellants' opposition. (*See* AA 231–32). Cosin's declaration stated that, although she had received certain notices from Epiq related to the BowFlex bankruptcy, she had not received notice that BowFlex intended to sell its assets "free and clear" of successor-liability claims. (*Id.*). Appellants also submitted a declaration from their

[3] The Douglas and Calderon complaints also named BowFlex as a defendant, but those Appellants later asserted this was done in error. (AA 285, 333).

counsel stating that they had served discovery requests seeking information as to the Debtors' and Johnson's pre-sale knowledge of the alleged defect in the Recalled Products and as to service of the Sale Notice, but that Johnson declined Appellants' request to continue the hearing on the Motion to Enforce until such discovery was complete. (*See* AA 244–46). Johnson ultimately responded to the discovery requests but refused to produce documents. (*See* AA 56). Appellants never formally moved to compel discovery.

On July 25, 2025, Johnson and the Trust filed a reply supported by a declaration from Epiq employee Joseph Saraceni ("Saraceni"). (AA 193–230). Saraceni's declaration states that Epiq served the Sale Notice on Cosin by email on March 14, 2024, at the same email address where she acknowledged receiving other notices, and that Epiq did not receive a bounce-back, error, or undeliverable message. (*See* AA 193–95).

The Bankruptcy Court held a hearing on the Motion to Enforce on July 31, 2025. (*See* AA 4–7). Appellants raised their need for discovery at the hearing, but the Bankruptcy Court denied the request. (*See* AA 56–57).

On August 11, 2025, the Bankruptcy Court issued a Memorandum Decision ("Enforcement Opinion"), (AA 158–78), and Order granting the Motion to Enforce ("Enforcement Order"), (AA 152–57). In the Enforcement Opinion, the Bankruptcy Court found that it had core subject-matter jurisdiction to enforce the injunctive and successor-liability provisions of the Sale Order. (AA 169–71). The Bankruptcy Court interpreted the Sale Order as permanently enjoining parties from seeking to enforce successor-liability claims against Johnson based on the acquired assets, and ordered Appellants to dismiss the District Court Actions because they "seemingly rushed into district court without any concern for the effects of the Debtors' bankruptcy case on their claims or any regard for the injunction and gatekeeper provisions approved by this court." (AA 171, 178).

The Bankruptcy Court also held that sufficient notice of the sale was provided to bind Appellants to the Sale Order because Appellants were unknown creditors and publication notice in *The New York Times*, *The Seattle Times*, and *The Columbian* was constitutionally sufficient. (AA 175–78). The Bankruptcy Court further found that the record did not contain evidence that the Debtors and/or Johnson had pre-sale knowledge of Appellants' claims, and that the existence of 337 pre-petition complaints from unknown consumers regarding the Recalled Products, without more, did not establish knowledge of a defect or claim requiring actual notice. (*Id.* at 172, 175–78). Alternatively, as to the notice issue, the Bankruptcy Court found that Appellants—specifically, Cosin—received actual and therefore adequate notice via email of the Sale Notice. (*Id.*). All told, the Bankruptcy Court held that the District Court Actions, as alleged against BowFlex and Johnson, were barred by the Sale Order, Plan, and Confirmation Order, and ordered Appellants to dismiss the District Court Actions with prejudice. (AA 157, 178).

Appellants did not seek a stay of the Enforcement Order. Instead, they appealed the Enforcement Order to this Court on August 26, 2025. (ECF No. 1).

## II. LEGAL STANDARD

District courts have jurisdiction over appeals from final orders of bankruptcy courts under 28 U.S.C. § 158(a)(1).

The standard of review for bankruptcy court decisions "is determined by the nature of the issues presented on appeal," and "where an issue presents mixed questions of law and fact, the Court applies the relevant standard to each component of the issue." *In re Li*, 654 B.R. 25, 32 (D.N.J. 2023) (quotations omitted). Courts considering such appeals review "the bankruptcy court's legal determinations *de novo*, its factual findings for clear error and its exercise of discretion for abuse thereof." *In re United Healthcare Sys., Inc.*, 396 F.3d 247, 249 (3d Cir. 2005).

## III. DISCUSSION

Appellants challenge the Bankruptcy Court's decision on several grounds. They argue that: (A) the Bankruptcy Court lacked jurisdiction to adjudicate the Motion to Enforce and enter the Enforcement Order directing dismissal of the District Court Actions; (B) even if jurisdiction existed, the Bankruptcy Court exceeded its authority by ordering those actions dismissed; (C) the Bankruptcy Court erred in construing the Sale Order to bar the District Court Actions; (D) Appellants received inadequate notice of the BowFlex sale and therefore cannot be bound by it; and (E) the Bankruptcy Court improperly denied the opportunity for Appellants to conduct discovery in connection with the Motion to Enforce. None of these arguments are persuasive. The Court will therefore affirm the Bankruptcy Court's decision in full.

### A. Bankruptcy Court Jurisdiction

Appellants argue that the Bankruptcy Court lacked jurisdiction to adjudicate the Motion to Enforce. (Appellants' Opening Br. ("Op. Br."), ECF No. 7 at 26). More precisely, Appellants claim the Bankruptcy Court lacked "ancillary" jurisdiction to "interfere with the authority of the district courts" and "adjudicate" the District Court Actions by ordering them dismissed with prejudice. (*Id.* at 26–27 (cleaned up)). Bankruptcy court jurisdiction is a question of law subject to *de novo* review. *In re Marcus Hook Dev. Park, Inc.*, 943 F.2d 261, 263 n.2 (3d Cir. 1991). Applying that standard here, the Court will affirm the Bankruptcy Court's exercise of jurisdiction.

Bankruptcy court jurisdiction is primarily a function of two federal statutes acting in tandem. First, 28 U.S.C. § 1334 grants district courts "original and exclusive jurisdiction of all cases under title 11" and "original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(a)–(b). In turn, district courts are authorized to refer those "cases" and "proceedings" to bankruptcy judges. 28 U.S.C. § 157(a). Section 157 also permits bankruptcy judges to adjudicate "all cases under title

11" as well as "core proceedings arising under title 11, or arising in a case under title 11," and further provides a non-exhaustive list of proceedings for which "core" jurisdiction is proper. *See* 28 U.S.C. § 157(b)(1)–(2).

As courts of equity, bankruptcy courts also "have inherent or ancillary jurisdiction to interpret and enforce their own orders wholly independent of the statutory grant under 28 U.S.C. § 1334." *In re Chateaugay Corp.*, 201 B.R. 48, 62 (Bankr. S.D.N.Y. 1996), *aff'd*, 213 B.R. 633 (S.D.N.Y. 1997). Compared to the strictures of statutory jurisdiction, a bankruptcy court's ancillary jurisdiction is much broader. It operates for the purposes of "permit[ting] disposition by a single court of claims that are, in varying respects and degrees, factually interdependent" and enabling a court "to manage its proceedings, vindicate its authority, and effectuate its decrees." *In re Revel AC, Inc.*, 532 B.R. 216, 224 (Bankr. D.N.J. 2015) (citing *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 380–81 (1994)).

Appellants' jurisdictional arguments fail at the outset in two respects. First, they mischaracterize the jurisdiction the Bankruptcy Court exercised. Appellants contend that the Bankruptcy Court improperly "adjudicate[d]" the underlying state-law claims asserted in the District Court Actions. But the Bankruptcy Court expressly stated that it was "not exercising jurisdiction over the Plaintiffs' putative class action claims." (AA 169). And as a practical matter, the Bankruptcy Court did not do so. The Enforcement Opinion and Order addressed only whether the District Court Actions violated the Bankruptcy Court's prior orders and the appropriate remedy for such violation. (*See* AA 178 ("The filing of the Plaintiffs['] complaints violated the Sale Order, Plan, and Confirmation Order.")).

Second, Appellants' challenge to the Bankruptcy Court's assertion of ancillary jurisdiction overlooks the court's principal holding that the Motion to Enforce was within its core jurisdiction

because the Motion concerned "the administration of the estate"; involved an "order[] approving the sale of property other than property resulting from claims brought by the estate against persons who have not filed claims against the estate"; and constituted a "proceeding[] affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship, except personal injury tort or wrongful death claims." (AA 169–70 (quoting 28 U.S.C. § 157(b)(2)(A), (N), (O))). It was only to resolve "any doubt" that the Bankruptcy Court alternatively found the exercise of ancillary jurisdiction proper. (AA 171).

Properly understood, this Court finds no error in the Bankruptcy Court's exercise of jurisdiction. It is well-established that requesting a bankruptcy court to interpret and enforce its own sale orders is "'a core proceeding because it require[s] the court to interpret and give effect to its previous sale orders.'" *In re E. Orange Gen. Hosp., Inc.*, 587 B.R. 53, 74 (D.N.J. 2018) (quoting *In re Allegheny Health Educ. & Rsch. Found.*, 383 F.3d 169, 176 (3d Cir. 2004) (finding that a dispute between non-debtors was core because it required the bankruptcy court to interpret and give effect to its prior sale orders)); *see In re CTE 1 LLC*, No. 19-30256, 2024 WL 2349620, at *2 (Bankr. D.N.J. May 21, 2024) (asserting core jurisdiction over a motion to enforce a sale order under 28 U.S.C. §§ 157(b)(2)(A), (N), and (O)); *In re Marcus Hook*, 943 F.2d at 266–67 (finding that a proceeding to determine the effect of a prior free-and-clear sale order against a non-debtor was within the bankruptcy court's core jurisdiction). Even setting aside "core" jurisdiction, as Appellants urge, the Court agrees with the Bankruptcy Court's alternative conclusion that the Motion to Enforce fell within its ancillary jurisdiction. *See In re Revel*, 532 B.R. at 224 (exercising ancillary jurisdiction to enforce a sale order).

Appellants do not mount a serious challenge to the Bankruptcy Court's exercise of core jurisdiction. (*See* Op. Br., ECF No. 7 at 27 n.4 (stating, in a footnote, only that "Appellants disagree

with portions" of the Bankruptcy Court's core jurisdiction ruling, without identifying those portions or explaining the basis for their disagreement)). And their argument contesting ancillary jurisdiction rests on a faulty premise. Appellants contend that, because no prior injunction existed for the Bankruptcy Court to enforce, the court improperly invoked ancillary jurisdiction to impose a "new" injunction. (Op. Br., ECF No. 7 at 29 (citing *In re Resorts Int'l, Inc.*, 372 F.3d 154 (3d Cir. 2004); *In re Ray*, 624 F.3d 1124 (9th Cir. 2010); *In re D'Angelo*, 654 B.R. 553 (Bankr. W.D. Pa. 2023); *Syngenta Crop Prot., Inc. v. Henson*, 537 U.S. 28 (2002))). Yet, as explained below, the Sale Order contained an injunction directly applicable to Appellants' claims in the District Court Actions. It also expressly vested the Bankruptcy Court with "exclusive jurisdiction to, among other things, interpret, implement, and enforce" the Sale Order and the APA. (AA 882–83). And where, as here, a bankruptcy court is asked to enforce its own injunction and has expressly retained jurisdiction to do so, its ancillary jurisdiction to ensure compliance with that injunction is, as Appellants acknowledge, "effectively perpetual." (Op. Br., ECF No. 7 at 28); *see Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 151 (2009) (holding that the bankruptcy court retained jurisdiction to interpret and enforce orders entered more than twenty years earlier where those orders expressly retained jurisdiction).

Accordingly, for all of these reasons, the Court affirms the Bankruptcy Court's exercise of jurisdiction.

**B. Authority of the Bankruptcy Court**

Appellants argue that the Bankruptcy Court exceeded its authority and violated the "federal comity principles" embodied in the "first-to-file" rule and the Anti-Injunction Act ("AIA") when it ordered Appellants to dismiss the District Court Actions. (Op. Br., ECF No. 7 at 10–16). The

Court disagrees because neither principle has any facial applicability.[4]

1. The First-to-File Rule Does Not Apply

The first-to-file rule dictates that, "'[i]n all cases of concurrent jurisdiction, the court which first has possession of the subject must decide it.'" *Crosley Corp. v. Hazeltine Corp.*, 122 F.2d 925, 929 (3d Cir. 1941) (quoting *Smith v. M'Iver*, 22 U.S. (9 Wheat.) 532 (1824)). "[T]he critical substantive inquiry" of the rule "is subject matter." *Synthes, Inc. v. Knapp*, 978 F. Supp. 2d 450, 457 (E.D. Pa. 2013). While the issues and parties involved need not be identical, there must be "a substantial overlap of the subject matter" for the rule to apply. *Id.* at 456.

Here, the first-to-file rule plainly does not apply. While the parties to the District Court Actions (taken together) and the Motion to Enforce are identical, the two proceedings present fundamentally different substantive questions. The District Court Actions assert state-law product-liability, warranty, and consumer protection claims and seek substantive, merits-based adjudication of those claims. On the other hand, the Motion to Enforce asked the Bankruptcy Court to interpret and enforce prior orders entered in the Chapter 11 proceedings to determine whether the Appellants' prosecution of the District Court Actions violated those orders. Indeed, none of the complaints in the District Court Actions appear to have even referenced the Bankruptcy Court

[4] In another argument broadly challenging the "power" of the Bankruptcy Court, Appellants assert that the Bankruptcy Court could not, consistent with 11 U.S.C. § 363(f), approve the BowFlex sale "free and clear" of undisclosed product-defect claims like those asserted in the District Court Actions because the claims asserted in the District Court Actions are not "interests" within the meaning of the Bankruptcy Code. (Op. Br., ECF No. 7 at 28–30). Oddly enough, however, they made the opposite concession before the Bankruptcy Court when litigating the Motion to Enforce. (AA 273 ("[T]he Defect Claims are inextricably intertwined with the assets sold by the Debtors to Johnson, so the Proposed Class Representatives acknowledge that the Defect Claims are plausibly an 'interest' in the assets within the meaning of section 363(f) as interpreted in [*In re Trans. World Airlines, Inc.*, 322 F.3d 283 (3d Cir. 2003)].")). Appellants cannot now, on appeal to this Court, reverse course. *See, e.g.*, *In re Natale*, 280 F. App'x 227, 231 (3d Cir. 2008) (arguments not raised in the bankruptcy court are waived on appeal). Accordingly, the Court declines to consider this argument on appeal.

proceedings, let alone sought interpretation of any order entered there. The two proceedings therefore did not present the type of "duplicative actions" that courts have found sufficient to warrant dismissing, staying, or transferring the later-filed actions. *Chavez v. Dole Food Co., Inc.*, 836 F.3d 205, 216 (3d Cir. 2016).

Therefore, the Bankruptcy Court did not violate the first-to-file rule when it entered the Enforcement Order and ordered Appellants to dismiss the District Court Actions.

2. <u>The AIA Does Not Apply</u>

The AIA prohibits a federal court from "grant[ing] an injunction to stay proceedings in a State court," subject to three enumerated exceptions. 28 U.S.C. § 2283. But the District Court Actions were filed in federal district courts, not state courts, and therefore fall outside the statute altogether. *See Grider v. Keystone Health Plan Cent., Inc.*, 500 F.3d 322, 330 (3d Cir. 2007) (explaining that the AIA "applies only when one court is a state court and the other is a federal court"). The AIA's plain terms thus foreclose Appellants' line of argument here.

Nevertheless, Appellants argue that a bankruptcy court's authority to affect federal litigation "cannot be greater than [its] power to enjoin a state court proceeding." (Op. Br., ECF No. 7 at 22). This non-textual argument is not persuasive. Even using the AIA as a guide, Appellants again misconstrue the posture of the Enforcement Order. The Bankruptcy Court did not "grant" a new injunction barring Appellants from prosecuting the District Court Actions. Rather, it enforced the preexisting injunctions contained in orders entered before those actions were ever filed. Additionally, whatever the temporal proximity of the prior injunction to the District Court Actions, those injunctions would fall within the AIA's exception for injunctions "expressly authorized by Act of Congress." 28 U.S.C. § 2283. The Bankruptcy Code expressly grants bankruptcy courts authority to issue and enforce injunctions in connection with bankruptcy

proceedings and asset sales. *See* 11 U.S.C. §§ 105, 363, 365; *Matter of Davis*, 691 F.2d 176, 177 (3d Cir. 1982) ("The Bankruptcy Code, however, is an 'expressly authorized' exception to the [AIA]."). The AIA therefore neither barred the Bankruptcy Court from adjudicating the Motion to Enforce nor limited the relief it could grant.

Accordingly, the Bankruptcy Court did not run afoul of any identifiable "federal comity principle" when it entered the Enforcement Order.

**C. Sale Order Interpretation**[5]

Appellants argue that the Bankruptcy Court erred in concluding that the Sale Order contains an injunctive provision barring the claims asserted in the District Court Actions. (Op. Br., ECF No. 7 at 36–37; Appellants' Reply Br. ("Reply Br."), ECF No. 9 at 10–14). Reviewing the Bankruptcy Court's decision on this issue for abuse of discretion, *In re Shenango Grp. Inc.*, 501 F.3d 338, 346 (3d Cir. 2007), this Court, like the Bankruptcy Court, "roundly rejects" that argument.[6] (AA 171).

Paragraph 15 of the Sale Order provides, in relevant part:

> [A]ll persons and entities, including, without limitation, the Debtors, creditors, . . . litigation claimants, and their respective successors and assigns, are hereby forever prohibited and

---

[5] The Court's inquiry is limited to whether the Sale Order bars the District Court Actions against Johnson. Although Appellants' Opening Brief also addresses the Plan's "gatekeeper provision" and the injunction contained in the Confirmation Order, Appellees correctly acknowledge that those provisions apply only to the District Court Actions' claims asserted against BowFlex, not Johnson. (Appellees' Br., ECF No. 8 at 62–63). Appellants' Reply Brief likewise narrows the dispute to whether the Sale Order bars the District Court Actions against Johnson. The Court confines its analysis accordingly.

[6] The parties advance divergent standards of review on this issue. (*See* Op. Br., ECF No. 7 at 7 ("The determination of whether a bankruptcy court order bars a claim is reviewed *de novo*.")); Appellees' Br., ECF No. 8 at 15 (advancing abuse of discretion review for a bankruptcy court's "interpretation of its own order"). The Court applies abuse of discretion review here because, at bottom, Appellants challenge whether the terms of the Sale Order apply to them, an interpretation issue. Nevertheless, even if *de novo* review were to apply, the Court would reach the same conclusion.

> enjoined from taking any action that would adversely affect or interfere with the ability of the Debtors to sell and/or transfer the Acquired Assets to the Purchaser (or its designee) in accordance with the terms of the APA and this Sale Order and are hereby forever barred, estopped and permanently enjoined from asserting such claims against any Purchaser Party or its property (including the Acquired Assets).

(AA 878).

Appellants fall squarely within this provision's scope. As "creditors" or, most precisely, "litigation claimants," they are "forever prohibited and enjoined from taking any action that would adversely affect or interfere" with BowFlex's sale to Johnson, and may not "assert such claims against [Johnson] or its property." (*Id.*).

To remove themselves from the scope of Paragraph 15, Appellants attempt to inject ambiguity into the phrase "enjoined from taking any action that would adversely affect or interfere with the ability of the Debtors to sell and/or transfer the Acquired Assets," reading it as narrowly limited to conduct that would interrupt the mechanics of closing the BowFlex sale. (*See* Reply Br., ECF No. 9 at 11). But that reading ignores the rest of Paragraph 15, which protects the transfer of the Acquired Assets "in accordance with" the APA and the Sale Order. The APA generally allocated to Johnson only those liabilities arising on or after the Closing Date. (*See* AA 895). Consistent with that allocation, Paragraph 9 of the Sale Order provides that the Acquired Assets were sold "free and clear of all *Claims*, Encumbrances and Interests *of any kind or nature whatsoever*," including "products liability," as well as contingent and unliquidated claims. (AA 865–66, 874 (emphasis added)). But even if that were not enough, Paragraph 13 provides that those "Claims, Encumbrances and Interests" were "unconditionally released, discharged and terminated" as of closing. (AA 876). And Paragraphs O and 20 make clear that Johnson, as the "Purchaser Party," would not bear liability arising from BowFlex's pre-Closing Date business or operations under any theory of successor or vicarious liability, whether "known or unknown," "existing or hereafter arising," or "asserted or unasserted." (AA 864–65, 880).

The sum of all this logically leads to the conclusion that the Sale Order barred Appellants' claims asserted in the District Court Actions, which sought to impose liability on Johnson based on alleged defects in products designed, manufactured, and sold by BowFlex before the Closing Date. The Bankruptcy Court did not err in reaching the same conclusion.

To be sure, courts have cautioned that broad sale-order language cannot be enforced without constitutionally sufficient notice. *See In re Motors Liquidation Co.* ("*Motors Liquidation*"), 829 F.3d 135, 156–67 (2d Cir. 2016); *In re Savage Indus.*, 43 F.3d 714, 721–23 (1st Cir. 1994). That issue will be addressed next. But as to the first matter of interpretation, the Court agrees with the Bankruptcy Court's conclusion that the Sale Order plainly bars the District Court Actions.

**D. Adequate Notice**

Appellants argue that they did not receive constitutionally or procedurally adequate notice of the sale such that the claims asserted in the District Court Actions could be extinguished consistent with due process. (*See* Op. Br., ECF No. 7 at 56–58). Preliminarily, the Court notes that the Third Circuit has not settled the question of whether a bankruptcy court's adequacy-of-notice determination is reviewed under a clear error or *de novo* standard. *See In re Congoleum Corp.*, 149 F.4th 318, 331 (3d Cir. 2025) (noting that the court has "sometimes reviewed the adequacy of notice in bankruptcy proceedings for clear error," but declining to decide which standard applied); *see also Chemetron Corp. v. Jones*, 72 F.3d 341, 347 (3d Cir. 1995) (applying clear-error review). As in *Congoleum*, however, the Court need not resolve that question because the Bankruptcy Court's determination withstands review under either standard.

"Due process requires notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their

objections." *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 272 (2010) (quotations omitted). In bankruptcy cases, what constitutes reasonably calculated notice to satisfy due process is different for "known" and "unknown" creditors. *Chemetron*, 72 F.3d at 346.

A "known creditor" is one whose identity is either actually known or "reasonably ascertainable by the debtor." *Tulsa Pro. Collection Serv., Inc. v. Pope*, 485 U.S. 478, 489–90 (1988). Known creditors are entitled to actual written notice of a debtor's bankruptcy filing. *Chemetron*, 72 F.3d at 346. By contrast, "[a]n 'unknown creditor' is one whose 'interests are either conjectural or future or, although they could be discovered upon investigation, do not in due course of business come to knowledge [of the debtor].'" *Id.* (quoting *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 317 (1950)). For unknown creditors, notification by publication will generally suffice. *Id.*

The Bankruptcy Court held that BowFlex's publication of the Sale Notice in *The New York Times*, *The Seattle Times*, and *The Columbian* satisfied due process because Appellants were unknown creditors. Appellants claim this was error because they should have been found to be known creditors entitled to actual notice. Relying principally on the Second Circuit's decision in *Motors Liquidation*, Appellants argue that because the Debtors and Johnson were aware of the dumbbell defects but did not disclose them, it was error for the Bankruptcy Court to consider Appellants unknown creditors entitled only to publication notice. (*See* Op. Br., ECF No. 7 at 44–49, 56). The Court disagrees.

*Motors Liquidation* involved plaintiffs seeking to pursue class claims against a successor entity, "New GM." *See* 829 F.3d at 143. Following the sale, New GM recalled vehicles because of a potentially lethal ignition-switch defect. *Id.* at 148–49. Many of those vehicles had been manufactured years before "Old GM" filed for bankruptcy and sold its assets to New GM free and

clear of its liabilities under 11 U.S.C. § 363. *Id*. The Second Circuit considered whether the plaintiffs had received sufficient notice of the sale to bind them to that free and clear sale. *Id.* at 158. The record below showed that Old GM had received complaints concerning the ignition-switch defect as early as 2002 and included a National Highway Traffic Safety Administration investigation, news reports dating to 2005, and a police report linking the defect to fatalities in 2005 and 2006. *Id.* at 148–51. Further, a post-sale independent investigation observed that "[Old] GM heard over and over from various quarters—including customers, dealers, the press, and their own employees—that the car's ignition switch led to" potentially lethal problems, and that "[a]lthough everyone [at Old GM] had responsibility to fix the problem, nobody took responsibility." *Id.* at 150. "In the face of all the reports and complaints of faulty ignition switches," the court affirmed the bankruptcy court's finding that Old GM knew, or reasonably should have known, of the defect several years prior to the sale to New GM, and thus the affected vehicle owner plaintiffs were known creditors entitled to actual notice of the free and clear sale. *Id.* at 159–61.

Despite Appellants' efforts to persuade this Court otherwise, the *Motors Liquidation* record bears little resemblance to the one before the Bankruptcy Court. As the Bankruptcy Court noted, *Motors Liquidation* involved "overwhelming evidence" of Old GM's "reckless disregard of the facts," sufficient to impute pre-sale knowledge of the defect on the debtors. (AA 175). Here, by contrast, Appellants rely primarily on the existence of 337 vaguely defined consumer complaints concerning the dumbbells to impute to BowFlex and/or Johnson knowledge of the defective products, and argue this was sufficient to alert the Appellees to the claims and thereby transform Appellants into known creditors entitled to actual notice. But aside from the relatively small number of consumer complaints, the record does not reveal what the consumer complaints said, whether they described the same type of defect later identified in the Recalled Products, who

submitted them, or whether they otherwise alerted the Debtors to the claims asserted by Appellants in the District Court Actions. As such, the evidence here falls well short of that proffered in *Motors Liquidation*. And because the burden of proving inadequate notice was on Appellants below, the Court finds no error in the Bankruptcy Court's conclusion that Appellants—apart perhaps from Cosin, whose alleged receipt of direct notice presents a separate issue—were unknown creditors entitled only to publication notice. *See In re RML, LLC*, 662 B.R. 858, 868 (Bankr. S.D.N.Y. 2024) ("The burden of proving inadequate notice lies with the party contending that a plan's discharge or injunction does not apply – here, the [Appellants].").

Turning to Cosin, the Court likewise finds no error in the Bankruptcy Court's conclusion that she received sufficient actual notice of the sale. (*See* AA 176–77). Cosin appeared on the Debtors' customer list[7] used to identify intended recipients of the Sale Notice, and Epiq employee Joseph Saraceni submitted a declaration stating that Epiq sent the Sale Notice to Cosin's email address. (*See* AA 193–95). Saraceni testified at the hearing on the Motion to Enforce to the same effect. (*See* AA 105–23). Although Cosin did not testify at the hearing, Appellants' counsel represented that Cosin could not find the Sale Notice in her email. (AA 71–72). The Bankruptcy

[7] The rest of the Appellants were apparently not on this customer list because they bought the dumbbells from third-party retailers. The Court acknowledges the practical issues that third-party sales pose for Debtors and potential creditors alike in providing and receiving constitutionally appropriate notice. Yet it still does not change the fact that nothing in the record indicates that the Debtors here, at the time of the sale, had notice of the type of defective-product claims at issue in the District Court Actions. And even assuming the remaining three Appellants who bought the dumbbells from third-party retailers would have been entitled to some form of heightened notice because their identities were known, it does not change the fact that the claims themselves, whoever the claimants might be, were unknown to the Debtors, and thus the claimants remain unknown creditors. *See In re New Century TRS Holdings, Inc.*, 450 B.R. 504, 512–13 (Bankr. D. Del. 2011) ("The availability of the [plaintiffs'] names and address in the Debtors' loan files may have reflected that [they] were known *customers*, but without more, it did not make them '*known creditors*.' A debtor need not be omnipotent or clairvoyant, but need only do what is reasonable under the circumstances to provide notice to ascertainable creditors." (emphasis in original) (citations omitted)).

Court nevertheless found that the notice was delivered to Cosin because Epiq received no indication that the email had failed or been returned. (AA 173–74). That conclusion was not erroneous. *See In re Morgan Indus. Corp.*, No. 12-21156, 2013 WL 3859873, at *2 n.4 (Bankr. D.N.J. June 12, 2013) ("To the extent the Debtors served any party identified herein via electronic mail, such service of the Sale Notice constitutes good and sufficient notice thereof."); *see also Stephenson v. AT&T Servs., Inc.*, No. 21-0709, 2021 WL 3603322, at *5 (E.D. Pa. Aug. 13, 2021) (explaining that an uncorroborated assertion of nonreceipt is insufficient to overcome the presumption of receipt); *cf. Jones v. Flowers*, 547 U.S. 220, 229–30 (2006) (requiring additional reasonable steps for a notice of a tax sale only after the sender learns that the initial notice attempt failed).

Finally, as a procedural matter, the Court finds no error in the form and content of the Sale Notice itself. Appellants argue that the generic newspaper publication and email notices, which failed to mention the dumbbell defect or expressly warn that successor-liability claims would be barred, were insufficient. (Op. Br., ECF No. 7 at 56–58). This argument is belied by the requirements for notices set forth in Bankruptcy Rule 2002. That Rule requires a sale notice to contain, as applicable here: "(A) a general description of the property; (B) the time and place of any public sale; (C) the terms and conditions of any private sale; [and] (D) the time to file objections[.]" FED. R. BANKR. P. 2002(c)(1). The Sale Notice here unequivocally satisfied this Rule by describing the property at issue ("substantially all" of the Debtors' assets), the time and place of the sale (April 8, 2024, at 10:00 a.m. Eastern, for the auction, and April 15, 2024, for the Sale Hearing), the terms and conditions of the sale (referring to the "Bidding Procedures"), and the time to file objections (April 11, 2024, at 5:00 p.m. Eastern). (JA 89–92). Nothing more is required by the Bankruptcy Code or the Constitution. *See In re Cone Mills Corp.*, 313 F. App'x

538, 541 (3d Cir. 2009) (finding a notice was adequate where it comported with Rule 2002, and appellants thus "received all the notice that was due").

Thus, notice of the sale was sufficient to bind Appellants to the contents of the Sale Order which, as noted, unequivocally barred the District Court Actions. The Court therefore affirms the Bankruptcy Court's decision on this issue.

**E. Discovery**

Finally, and related to the adequate notice issue, Appellants contend that it was error for the Bankruptcy Court to proceed with the Motion to Enforce hearing and foreclose discovery into the Debtors' and Johnson's knowledge of the Recalled Products claims prior to the sale. (Op. Br., ECF No. 7 at 49–52). A bankruptcy court's discovery rulings are reviewed for abuse of discretion. *In re Kiwi Int'l Air Lines, Inc.*, 344 F.3d 311, 323 (3d Cir. 2003).

The Court sees no abuse of discretion here, particularly because Appellants waived the discovery issue below. The Motion to Enforce was a contested matter under Federal Rule of Bankruptcy Procedure 9014. Bankruptcy Rules 9014(c)(1) and 7056 make Federal Rule of Civil Procedure 56 applicable to contested matters. Under Rule 56, a party opposing summary judgment who believes additional discovery is necessary must submit an affidavit or declaration stating that "for specified reasons, it cannot present facts essential to justify its opposition." FED. R. CIV. P. 56(d). Specifically, the party must submit an affidavit or declaration identifying "what particular information is sought; how, if uncovered, it would preclude summary judgment; and why it has not previously been obtained." *Dowling v. City of Phila.*, 855 F.2d 136, 139–40 (3d Cir. 1988) (interpreting Rule 56(d)'s predecessor provision, Rule 56(f)). And "in all but the most exceptional cases," failure to comply with Rule 56(d) is fatal to a claim on appeal that discovery was insufficient. *Bradley v. United States*, 299 F.3d 197, 207 (3d Cir. 2002); *see also Dowling*, 855

F.2d at 139 (noting that "[m]ost courts which have considered the issue agree that filing an affidavit is necessary for the preservation of a Rule [56(d)] contention that summary judgment should be delayed pending further discovery" (quotations omitted)).

Here, Appellants waived the discovery issue because they submitted no affidavit or declaration satisfying Rule 56(d). Although Appellants' counsel included with their opposition to the Motion to Enforce a declaration and copies of the discovery requests served on BowFlex and Appellees, (AA 244–66), the declaration merely recounts the parties' negotiations over those requests, (AA 245–46). Counsel's declaration does not state any "specified reasons" that Appellants "cannot present facts essential to justify" their opposition to the Motion to Enforce. FED. R. CIV. P. 56(d). Without such assertions before the Bankruptcy Court, the declaration is insufficient under Rule 56. *See Duran v. Warner*, No. 07-5994, 2013 WL 4483518, at *6 (D.N.J. Aug. 20, 2013) (finding an affidavit insufficient where it "has not identified what specific information regarding Defendant [] is sought and how this information, if uncovered, would preclude summary judgment"); *Hutchins v. United Parcel Serv., Inc.*, No. 01-1462, 2005 WL 1793719, at *8 (D.N.J. July 26, 2005), *aff'd*, 197 F. App'x 152 (3d Cir. 2006) (finding plaintiff's affidavit "wanting" where it "makes generalized assertions that no discovery has been taken[,] . . . fails to address why the discovery he [previously] obtained" is insufficient, and "more importantly, [] fails to identify what particular information he would seek if the motion for summary judgment were stayed"). The failure to properly preserve this issue before the Bankruptcy Court renders it waived on appeal.

Nor do exceptional circumstances excuse that failure. Appellants identified their asserted need for discovery shortly after the Motion to Enforce was filed. But after Appellees declined to comply voluntarily with their requests, Appellants did not pursue the issue through available

procedures, including by moving to compel. Their only further affirmative step was to raise the issue at the hearing on the Motion to Enforce. (*See* AA 56–57). And their conduct otherwise suggested that they had abandoned their request for additional discovery. Most notably, Appellants agreed to a Scheduling Stipulation that conspicuously omitted any production deadlines and did not otherwise address the discovery dispute they had identified. (*See* JA 417). All told, Appellants were thus well aware of the discovery issue before the Bankruptcy Court but failed to pursue it in a manner that preserved it for this appeal. *See In re Pazzo Pazzo, Inc.*, No. 18-1216, 2022 WL 3678250, at *7 (D.N.J. Aug. 25, 2022) (finding a discovery issue waived where the appellant failed to submit a Rule 56(d) affidavit or declaration); *see also United States v. Williams*, 156 B.R. 77, 81 (S.D. Ala. 1993) (citing *In re Espino*, 806 F.2d 1001 (11th Cir. 1986) ("Issues presented in a mere cursory manner to the Bankruptcy Court are not preserved for appeal.")).

Even assuming the issue was properly preserved, the Court finds that the Bankruptcy Court did not abuse its discretion in denying further discovery. Appellants sought evidence that would impute pre-sale knowledge of the alleged dumbbell defect to Appellees and thereby support treating Appellants as known creditors entitled to actual notice under *Motors Liquidation*. But aside from attaching their discovery requests to counsel's declaration, Appellants never explained what factual information the requested discovery would uncover, how that information would establish the Debtors' or Johnson's knowledge of the alleged defect, or how it would show that their alleged claims were reasonably ascertainable through reasonably diligent efforts. *In re W.R. Grace & Co.*, 316 F. App'x 134, 137 (3d Cir. 2009). Therefore, on the record before it, the Bankruptcy Court did not abuse its discretion when it foreclosed further discovery in connection with the Motion to Enforce.

## CONCLUSION

In sum, the Bankruptcy Court had jurisdiction to interpret and enforce its prior orders, acted within its authority in directing dismissal of the District Court Actions, correctly concluded that the Sale Order barred Appellants' claims against Johnson, and did not err in finding that Appellants received constitutionally sufficient notice or in denying further discovery. The Enforcement Order is therefore **AFFIRMED**. An appropriate Order accompanies this Opinion.

Date: July 30, 2026

Christine P. O'Hearn

**CHRISTINE P. O'HEARN**
**United States District Judge**